**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                 No. CR 14-1532 JB

ORLANDO ROYBAL,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Defendant's Objections to the Presentence Report and Sentencing Memorandum, filed November 18, 2014 (Doc. 26)("Objections"). The Court held a sentencing hearing on December 12, 2014. The primary issues are: (i) whether to assess 9 criminal history points for the five offenses for which Defendant Orlando Roybal was sentenced on March 27, 2003; and (ii) whether to assess 6 criminal history points for the two offenses for which Roybal was sentenced on May 24, 2007. The Court will not assess 9 criminal history points for the five offenses for which the Honorable Ross C. Sanchez, District Court Judge for the Second Judicial District, County of Bernalillo, State of New Mexico, sentenced Roybal on March 27, 2003. Because the Court cannot determine by a preponderance of the evidence for which of those five offenses Judge Sanchez suspended Roybal's sentence and for which he imposed incarceration, the Court must assume that Judge Sanchez either did not impose incarceration for those offenses or suspended the sentences for all of them. The Court would, accordingly, assess only 1 criminal history point for each of those offenses. Because Roybal received those sentences ten years before the instant offense, however, § 4A1.2(e) of the United States Sentencing Guidelines dictates that they

cannot count towards Roybal's criminal history score.  Thus, the Court will not assess any criminal history points for those five offenses.  The Court will, however, assess 6 criminal history points for the two offenses for which Roybal was sentenced on May 24, 2007.  While Roybal was sentenced those offenses at the same hearing, they are separate sentences under § 4A1.2(a)(2), because they were separated by an intervening arrest.  Consequently, the Court will assess 3 criminal history points for each of those offenses.  The Court concludes, therefore, that Roybal's criminal history score is 6, placing him in a criminal history category of III, with a Guidelines range of 70-87 months imprisonment.

## FACTUAL BACKGROUND

The Court takes its facts from the Presentence Investigation Report, disclosed August 20, 2014, and revised December 8, 2014 ("Revised PSR"), that the United States Probation Office ("USPO") prepared.[1]  On November 9, 2000, Roybal was arrested for committed aggravated

---

[1]The USPO disclosed the initial PSR on August 20, 2014.  See Presentence Investigation Report, disclosed August 20, 2014.  After Roybal filed the Objections, the USPO disclosed a revised PSR on December 8, 2014.  See Revised PSR at 1.  In a letter attached to the Revised PSR, Rebecca M. Smith, United States Probation Officer, notes that the USPO made the following changes in the Revised PSR:

Facesheet: The days in custody was updated to 278 day [sic] from March 20, 2014 through December 12, 2014.

Paragraph 34: A third paragraph was added to include information in regards to the defendant's violation which increased his criminal history points for this conviction.

Paragraphs 35, 39, and 40: Upon further review, and in speaking to the U.S. Sentencing Commission, the probation office reevaluated how the criminal history points were assessed in these entries.  The points were assessed conservatively as the Judgment and Sentence was extremely vague and did not give clear reference to which sentences were suspended or which sentences the violation of probation should be associated.

battery with a deadly weapon.  See Revised PSR ¶ 34, at 7.  On March 31, 2001, Roybal was arrested for committing larceny over $250.  See PSR ¶ 35, at 8.  On November 16, 2001, Roybal was arrested for possession of a controlled substance (methamphetamine).  See PSR ¶ 39, at 10. On March 30, 2002, Roybal was arrested for possession of a controlled substance (methamphetamine).  See PSR ¶ 40, at 11-12.  On June 5, 2002, Roybal was arrested for armed robbery with a deadly weapon.  See PSR ¶ 41, at 12-13.  On March 27, 2003, Roybal pled guilty to all five of these offenses and Judge Sanchez sentenced him for those offenses on the same day. See Revised PSR ¶ 34, at 7; id. ¶ 35, at 8; id. ¶ 39, at 10; id. ¶ 40, at 11-12; id. ¶ 41, at 12-13.

At Roybal's sentencing hearing, Judge Sanchez him to 6 years imprisonment and 5 years of supervised probation.  See Revised PSR ¶ 34, at 7; id. ¶ 35, at 8; id. ¶ 39, at 10; id. ¶ 40, at 11-12; id. ¶ 41, at 12-13.  Judge Sanchez stated, in pertinent part:

> The Court will sentence Mr. Roybal as follows: So 3 years as to Count 1 of CR-2000-4653; 18 months on CR-2002-0098; 18 months on 2002-03145; 18 months on CR-2002-01074; 9 years on Count 1 of CR-2002-02056.  Per agreement, the sentences are to run consecutively for a total period of [1]6 ½ years in the New Mexico Department of Corrections.  All but six years will be suspended on condition that Mr. Roybal be on supervised probation for 5 years . . . .

Transcript of Proceedings at 7:1-8 (taken March 27, 2003)(Sanchez, J.), filed November 18, 2014 (Doc. 26-4)("Mar. 27, 2003, Tr.").

On December 22, 2006, Roybal was arrested for contributing to the delinquency of a minor.  See Revised PSR ¶ 42, at 13-14.  On December 26, 2006, Roybal was arrested for possession of a controlled substance (cocaine) while already in custody at the Metropolitan Detention Center.  See Revised PSR ¶ 43, at 14.  Roybal pled guilty to both offenses on May 24,

---

Paragraphs 44 and 45: Due to the recalculations of the defendant's criminal history, the criminal history points changed from 18 points to 15 points.  It should be noted the criminal history category of IV did not change.

Letter from Rebecca M. Smith, United States Probation Officer, to the Court  at 1 (Dec. 5, 2014).

2007, and Judge Sanchez sentenced him to 18 months for each offense, with the sentences to run consecutively.  See Revised PSR ¶¶ 42-43, at 13-14.

On or about August 20, 2007, Roybal appeared before Judge Sanchez for a probation revocation hearing.   See Order Revoking Probation and Commitment to Department of Corrections at 1-2 (dated August 20, 2007), filed December 19, 2014 (Doc. 30)("Order").  Judge Sanchez imposed the following sentence:

**TERMS OF SENTENCE**

IT IS ORDERED that the defendant be sentenced to the custody of the Department of Corrections to be imprisoned for a total of 16 ½ years.

The Defendant was originally sentenced on March 27, 2003 to:

Three years, on a conviction of AGGRAVATED BATTERY, Count 1 of CR 0-04653, a third degree felony offense occurring on or about March 21, 2000; AND

Eighteen months, on a conviction of POSSESSION OF METHAMPHETAMINE, Count 1 of CR-02-00098, a fourth degree felony offense occurring on or about November 16, 2001.

Eighteen months, on a conviction of POSSESSION OF METHAMPHETAMINE, Count 1 of CR 02-03145, a fourth degree felony offense occurring on or about March 30, 2002; AND

Eighteen months, on a conviction of LARCENY (OVER $250), Count 1 of CR 02-01074, a fourth degree felony offense occurring on or about March 31, 2001; AND

Nine years, on a conviction of ARMED ROBBERY, Count 1 of CR 02-02056, a second degree felony offense occurring on or about June 26, 2002;

With the sentences to be served consecutive to each other for a total term of 16 ½ years.

**CREDIT AND INCARCERATION**

Defendant is to receive 2190 days confinement credit days pre-sentence confinement credit and credit for 288 days served on probation.

- 4 -

> Of the balance of 3544 remaining days:
> 2007 days of defendant's sentence is suspended without condition;
> 1537 days are to be served in actual imprisonment as of May 24, 07.

Order at 1-2.

This federal offense occurred on March 10, 2014, at approximately 3:45 p.m.  See Revised PSR ¶ 11, at 4.  Albuquerque Police Department ("APD") officers were dispatched to 712 Prospect Dr., N.W., in Albuquerque, in reference to a possible shooting.  See Revised PSR ¶ 10, at 4.  The officers arrived and found a white sedan attempting to leave the area.  See Revised PSR ¶ 11, at 4.  The officers stopped the vehicle and found Louie Baca inside, who was suffering from a gunshot to his right leg.  See Revised PSR ¶ 11, at 4.  The officers learned that Baca had an argument with Roybal, during which Roybal became so upset that he pulled out a handgun and pointed it at Baca.  See Revised PSR ¶ 11, at 4.  Baca then began taunting Roybal, telling Roybal to shoot him.  See Revised PSR ¶ 13, at 4.  In response, Roybal shot Baca in the lower right leg and then fled the scene.  See Revised PSR ¶¶ 13-14, at 4.

The officers eventually found Roybal and arrested him.  See Revised PSR ¶ 14, at 4.  The officers also discovered the handgun on the roof of 618 Towner N.W., Albuquerque.  See Revised PSR ¶ 14, at 4.  When the officers interviewed him, Roybal admitted that he borrowed the handgun from an unknown male before the shooting and that he wanted it for protection from Baca because of a disagreement they were having over a vehicle.  See Revised PSR ¶ 15, at 4. Roybal admitted to having the confrontation with Baca, shooting him, and running from the scene.  See Revised PSR ¶ 15, at 4.  He also stated that he discarded the handgun on the roof in an attempt to hide it from law enforcement.  See Revised PSR ¶ 15, at 4.

## **PROCEDURAL BACKGROUND**

Roybal pled guilty to being a felon in possession of a firearm and ammunition under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  See Plea Agreement, filed June 18, 2014 (Doc. 16); Clerk's Minutes for Proceedings Held Before Magistrate Judge Lorenzo F. Garcia, filed June 18, 2014 (Doc. 17).  In the initial PSR, the USPO calculated that Roybal has a total offense level of 25 and a criminal history score of 18 -- placing him in criminal history category VI.  See PSR ¶ 31, at 6; id. ¶¶44-45, at 14.

The PSR calculated Roybal's history score by assigning criminal history points to seven of Roybal's prior offenses -- five of which he received sentences for on March 27, 2003, and two of which he received sentences for on May 24, 2007.  See PSR ¶ 34, at 7; id. ¶ 35, at 8; id. ¶¶ 39-43, at 10-14.  The PSR added 12 criminal history points for the five convictions for which Roybal was sentenced on March 27, 2003:  (i) 3 points for his November 9, 2000, aggravated battery with a deadly weapon crime, see PSR ¶ 34, at 7; (ii) 2 points for his March 31, 2001, larceny over $250 crime, see PSR ¶ 35, at 8; (iii) 2 points for his November 16, 2001, possession of a controlled substance (methamphetamine) crime, see PSR ¶ 39, at 10; (iv) 2 points for his March 20, 2002, possession of a controlled substance (methamphetamine) crime, see PSR ¶ 40, at 11;  and (v) 3 points for his June 5, 2002, armed robbery with a deadly weapon crime, see PSR ¶ 41, at 12.  The PSR added 6 criminal history points for the two convictions for which Roybal was sentenced on May 24, 2007: (i) 3 points for his December 22, 2006, contributing to the delinquency of a minor crime, see PSR ¶ 42, at 13; and (ii) 3 points for his December 26, 2006, possession of a controlled substance  (cocaine) crime, see PSR ¶ 43, at 14.

1.     **The Objections.**

Roybal filed the Objections on November 18, 2014.  See Objections at 1.  In the Objections, Roybal argues that the Court should not rely on the PSR's assessment of a criminal history score of 18 for two reasons.  See Objections at 1-9.  First, Roybal asserts that the PSR's methodology for calculating his criminal history score for the five offenses for which he was sentenced on March 27, 2003, "is unclear and unstated."  Objections at 3.  Roybal explains that, on March 27, 2003, Judge Sanchez gave him one term of imprisonment for all five of those offenses and suspended a significant portion of his sentences.  See Objections at 5.  Roybal argues that it is impossible to tell from the judgment or the sentencing hearing transcript for which sentences Judge Sanchez imposed incarceration and which he suspended.  See Objections at 5 (citing Mar. 27, 2003, Tr. at 7:1-9 (Sanchez, J.)).  Roybal points out that, at his sentencing hearing, Judge Sanchez said only that his sentences "are to run consecutively . . . [and] all but six years will be suspended."  Objections at 5 (quoting Mar. 27, 2003, Tr. at 7:5-8 (Sanchez, J.)).

Roybal asserts that the PSR used an arbitrary "percentage valuation" to assign criminal history points to each of his sentences.  Objections at 3.  Roybal states that

> the probation officer first calculated the percentage that the sentence imposed for each offense contributed to the whole sentence of sixteen and a half years.  For example, eighteen months comprises 9.09% of the whole (16 ½ year) sentence. The probation officer then applied that percentage value to the six year sentence to calculate the number of months of imprisonment that each offense would be worth.  Using the same example, 9.09% of six years accounts for 6.55 months of that sentence.  For this reason, two points are given to the larceny and possession offenses and three points each to the aggravated battery and robbery offenses.

Objections at 3.  Roybal states: "The PSR does not prove, as it can't, that the court used this calculation to get to a six year sentence."  Objections at 5.  Roybal argues that it is just as plausible that Judge Sanchez suspended every sentence completely except the armed robbery offense and then suspended three years of that sentence to arrive at a six-year sentence.  See

Objections at 5.  Roybal asserts that, because the record is inconclusive as to the term of imprisonment that Judge Sanchez assigned to each of Roybal's offenses, the Court cannot accept the PSR's calculation of his criminal history score for those offenses.  See Objections at 8. Roybal argues that the Court may presume only that Judge Sanchez sentenced him for the armed robbery offense on March 27, 2003.  See Objections at 8.  Roybal contends that "[t]his is so because the armed robbery was the only offense for which the court statutorily could impose a six year prison term."  Objections at 8.

Second, Roybal argues that the PSR improperly assessed 6 criminal history points for the convictions for which he was sentenced on May 24, 2007.  See Objections at 9.  According to Roybal, § 4A1.2(a)(2) states that, "if there is no intervening arrest and the sentences were imposed on the same day, then the sentences are not counted separately."  Objections at 9. Roybal asserts that, although he was sentenced for the two offenses on the same day, the PSR does not present any proof that an intervening arrest separated the offenses.  See Objections at 9 (citing PSR ¶ 43, at 14).  Roybal concludes, therefore, that his criminal history score for those offenses is 3 rather than 6.  See Objections at 9.

> ## 2. <u>The Addendum to the PSR and the Revised PSR.</u>

The USPO responded to the Objections on December 8, 2014.  See Addendum to the PSR at 1-2, disclosed December 8, 2014 ("Addendum"); Revised PSR at 1.  In response to Roybal's objection that the PSR improperly assessed 12 criminal history points for the convictions for which he was sentenced on March 27, 2003, the USPO altered that score to 9 by removing a point from each of the following offenses: (i) his March 31, 2001, larceny over $250 crime; (ii) his November 16, 2001, possession of a controlled substance (methamphetamine)

crime; and (iii) his March 20, 2002, possession of a controlled substance (methamphetamine) crime.  See Addendum at 1.  The USPO explained:

> Each conviction was separated by an intervening arrest, and according to USSG § 4A1.2(a)(2), prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest. The points were assessed conservatively as the Judgment and Sentence was extremely vague and did not give clear reference to which sentences were suspended or which sentences the violation of probation should be associated.

Addendum at 1.  The USPO assessed 1 point -- rather than 3 -- for Roybal's November 9, 2000, aggravated battery crime, but bumped the points back up to 3 because his probation was revoked on August 20, 2007.  See Addendum at 1.

Turning to Roybal's objection to the PSR's assessment of 6 criminal history points for the two convictions for which he was sentenced on May 24, 2007, the USPO argues that an intervening arrest separated Roybal's December 22, 2006, and December 26, 2006, offenses. See Addendum at 2.  The USPO asserts that, although Roybal was already in custody at the Metropolitan Detention Center when he committed the December 26, 2006, offense, his conduct "was unrelated to his prior arrest."  Addendum at 2.  The USPO points out that "had the defendant committed these crimes outside of the detention center there would have been a further arrest."  Addendum at 2.  The USPO, thus, did not reassess Roybal's criminal history score for those two convictions.  See Addendum at 2.  Accordingly, the Revised PSR gives Roybal a criminal history score of 15 -- 9 points for the five convictions for which he was sentenced on March 27, 2003, and 6 points for the two convictions for which he was sentenced on May 24, 2007.  See Revised PSR ¶ 34, at 7; id. ¶ 35, at 8; id. ¶¶ 39-43, at 10-14.

3.   **The Response**.

The United States responded to the Objections on December 10, 2014.  See United

States' Response to Orlando Roybal's Sentencing Memorandum (Doc 26), filed December 12,

2014 (Response).  The Response's "Argument" section states:

> On June 18, 2014, the Defendant entered into a Rule 11, Fed. R. Crim. P
> [sic] written plea agreement wherein the United States and the Defendant
> recommended that the Defendant is entitled to a reduction of two levels from the
> base offense level as calculated under the sentencing guidelines, and if applicable,
> a reduction of an additional offense level pursuant to U.S.S.G. § 3E1.1(b).  The
> United States concurs that based upon a total offense level of 25 and a criminal
> history category of VI, the guideline imprisonment range is 110 months to 137
> months.
>
> The brief facts are that on March 10, 2014, the Defendant went to 712
> Prospect NW, Albuquerque, NM, to discuss a vehicle with a man named Louie
> Baca.  The defendant had a gun in his possession, a Smith and Wesson, model
> SW40VE, .40 caliber semi-automatic pistol, serial number PBT5504.  The
> Defendant also had in his possession a magazine with eleven (11) Fiocchi brand,
> .40 caliber cartridges, and one (1) Reington [sic] brand, 40 caliber cartridge.  The
> Defendant knew that he was not supposed to have this weapon and ammunition in
> his possession as he had previously been convicted of a felony offense which had
> a sentence of more than one year.  The Defendant learned that the weapon was
> made in Massachusetts, the Fiocchi brand cartridges were made in Italy, and the
> Remington brand cartridge was made in either Connecticut and Arkansas.  Thus
> the weapon and ammunition traveled in interstate commerce.
>
> The United States respectfully requests that this Court conclude that a
> sentence at the low end of the sentencing guideline range would constitute a
> sentence that is sufficient but not greater than necessary.

Response at 1-2 (citations omitted).

4.   **The December 12, 2014, Sentencing Hearing**.

The Court held a sentencing hearing on December 12, 2014.  See Transcript of Hearing

(taken December 12, 2014)("Dec. 12, 2014, Tr.").[2]  At the hearing, the parties largely reiterated

their arguments from the briefing.  See Tr. at 1:12-19:25 (Robbenhaar, Armijo).  Roybal added

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

that, although the USPO recalculated his criminal history score, the new score is still based on speculation.  <u>See</u> Dec. 12, 2014, Tr. at 10:17-25 (Robbenhaar).  Roybal contends that, because there is no indication in Judge Sanchez' judgment or in the hearing transcript how he calculated the six-year sentence he imposed on March 27, 2003, it is impossible to assess criminal history points for those convictions.  <u>See</u> Dec. 12, 2014, Tr. at 6:19-23 (Robbenhaar).

Roybal points out that, during the sentencing process, the Court may rely only on facts that the United States proves by a preponderance of the evidence.  <u>See</u> Dec. 12, 2014, Tr. at 6:23-7:3 (Robbenhaar).  In Roybal's view, Judge Sanchez' judgment and the transcript from the sentencing hearing on  March 23, 2007, do not establish by a preponderance of the evidence which sentences he received for which convictions and which sentences were suspended.  <u>See</u> Dec. 12, 2014, Tr. at 10:10-11:6 (Robbenhaar).  Roybal also directed the Court to <u>United States v. Sabillon-Umana</u>, No. CIV 13-1363, Appeal from the United States District Court for the District of Colorado, filed December 8, 2014 ("Appeal").  <u>See</u> Dec. 12, 2014, Tr. at 11:7-12:3 (Robbenhaar).  According to Roybal, <u>United States v. Sabillon-Umana</u> was a sentencing matter in which a United States district court judge decided the defendant's base offense level and then asked the USPO what facts could support such a level.  <u>See</u> Dec. 12, 2014, Tr.  at 11:7-19 (Robbenhaar).  Roybal stated that, in an opinion that the Honorable Neil M. Gorsuch, United States Circuit Judge for the Tenth Circuit, authored and the Honorable David B. Sentelle, United States Circuit Judge for the United States Court of Appeals for the District of Columbia Circuit, sitting by designation, and Judge Murphy, joined, the United States Court of Appeals for the Tenth Circuit stated that "you can't back into facts to fit your desired result.  You have to establish facts first and then do your guideline analysis . . . .  [F]acts drive sentencing decisions, not the other way around."  Dec. 12, 2014, Tr. at 11:21-26:1 (Robbenhaar).  Roybal argued that

Judge Gorsuch's analysis applies equally in this case, because, if the Court accepts the PSR's criminal history calculation without sufficient evidence to support it, the Court would be deciding what criminal history score Roybal would receive and then backing into the necessary facts to fit that result.  <u>See</u> Dec. 12, 2014, Tr. at 12:1-16 (Robbenhaar).

After the hearing, the USPO sent the Court an additional document to assist the Court in calculating Roybal's criminal history.  <u>See</u> Order at 1.  The document is Judge Sanchez' order revoking Roybal's probation, which was filed with the Second Judicial District Court, County of Bernalillo, State of New Mexico, on August 20, 2007.  <u>See</u> Order at 1.  The Order states, in pertinent part:

### <u>TERMS OF SENTENCE</u>

IT IS ORDERED that the defendant be sentenced to the custody of the Department of Corrections to be imprisoned for a total of 16 ½ years.

The Defendant was originally sentenced on March 27, 2003 to:

Three years, on a conviction of AGGRAVATED BATTERY, Count 1 of CR 0-04653, a third degree felony offense occurring on or about March 21, 2000; AND

Eighteen months, on a conviction of POSSESSION OF METHAMPHETAMINE, Count 1 of CR-02-00098, a fourth degree felony offense occurring on or about November 16, 2001.

Eighteen months, on a conviction of POSSESSION OF METHAMPHETAMINE, Count 1 of CR 02-03145, a fourth degree felony offense occurring on or about March 30, 2002; AND

Eighteen months, on a conviction of LARCENY (OVER $250), Count 1 of CR 02-01074, a fourth degree felony offense occurring on or about March 31, 2001; AND

Nine years, on a conviction of ARMED ROBBERY, Count 1 of CR 02-02056, a second degree felony offense occurring on or about June 26, 2002;

With the sentences to be served consecutive to each other
for a total term of 16 ½ years.

**CREDIT AND INCARCERATION**

Defendant is to receive 2190 days confinement credit days pre-sentence
confinement credit and credit for 288 days served on probation.

Of the balance of 3544 remaining days:
2007 days of defendant's sentence is suspended without condition;
1537 days are to be served in actual imprisonment as of May 24, 07.

Order at 1-2.

**LAW REGARDING EVIDENCE USED AT SENTENCING**

The standard of admissibility for evidence at sentencing is different than at trial. "A

preponderance-of-the-evidence standard applies at sentencing." United States v. Monroy-

Reynoso, No. CR 12-1609 JB, 2012 WL 6632594, at *5 (D.N.M. Dec. 13, 2012)(Browning,

J.)(citing United States v. Manatau, 647 F.3d 1048, 1054 n.2 (10th Cir. 2011)(noting that the

preponderance-of-the-evidence standard applies during sentencing); United States v. Gomez-

Arrellano, 5 F.3d 464, 466 (10th Cir. 1993)("Sentencing determinations of relevant conduct and

offense characteristics must be supported by a preponderance of the evidence.")). Additionally,

evidence which is not admissible at trial may be admissible at sentencing. The Sentencing

Guidelines authorize a court to consider hearsay in the sentencing process. See United States v.

Beaulieu, 893 F.2d 1177, 1179 (10th Cir. 1990)(holding that reliable hearsay may be used in

sentencing under the guidelines); United States v. Cunningham, No. CR 06-2493 JB, 2008 WL

6049940, at * 13 (D.N.M. Oct. 28, 2008)(Browning, J.)("[T]he Court may rely on hearsay at

sentencing so long as it has sufficient indicia of reliability to support its probable accuracy."

(alteration in original)(internal quotation marks omitted)). Section 6A1.3 states: "In resolving

any dispute concerning a factor important to the sentencing determination, the court may

consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3.  Likewise, the protections of the Confrontation Clause of the Sixth Amendment to the United States Constitution do not apply in the sentencing context. See United States v. Bustamante, 454 F.3d 1200, 1202-03 (10th Cir. 2006)(recognizing that Crawford v. Washington, 541 U.S. 36 (2004), does not apply to sentencing proceedings).

## LAW REGARDING CALCULATING CRIMINAL HISTORY SCORES

Section 4A1.1 states, in relevant part: "The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A." Subsection (b) states: "Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)."  U.S.S.G. § 4A1.1(b).  Subsection (a) states: "Add 3 points for each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a).

The Application Note for § 4A1.1(b) indicates § 4A1.2(a) defines that the term "prior sentence."  U.S.S.G. § 4A1.1(a) n.1.  Section 4A1.2(a)(2) states:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; and (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2).

## ANALYSIS

The Court will sustain the Objections in part and overrule them in part.  The Court will sustain Roybal's objection to the Revised PSR's assessment of 9 criminal history points for the

five offenses for which Roybal was sentenced on March 27, 2003, and will not assess any criminal history points for those offenses.  Because the Court cannot determine by a preponderance of the evidence which of those five sentences Judge Sanchez suspended and for which he imposed incarceration, the Court would assume that Judge Sanchez either did not impose incarceration for those offenses or suspended Roybal's sentences for all of them.  The Court would, accordingly, assess only 1 criminal history point for each of those offenses; because Roybal received those sentences ten years before this federal offense, however, §4A1.2(e) dictates that they cannot count towards Roybal's criminal history score.  Thus, the Court will not assess any criminal history points for those five offenses.  The Court will overrule Roybal's objection to the Revised PSR's assessment of 6 criminal history points for the offenses for which he was sentenced on May 24, 2007.  While Roybal was sentenced for both of those offenses at the same hearing, they are separate sentences under §4A1.2(a)(2), because an intervening arrest separated the underlying offenses.  Consequently, the Court will assess 3 criminal history points for each of those offenses.  The Court concludes, therefore, that Roybal's criminal history score is 6, placing him in a criminal history category of III and a guidelines range of 70-87 months imprisonment.

I.    **THE COURT WILL NOT ASSESS ANY CRIMINAL HISTORY POINTS FOR THE OFFENSES FOR WHICH ROYBAL WAS SENTENCED ON MARCH 27, 2003.**

The Court will not count any of the offenses for which Roybal was sentenced on August 20, 2007, towards Roybal's criminal history score.  In United States v. Sabillon-Umana, Judge Gorsuch stated: "[I]n our legal order properly found facts drive sentencing decisions, not the other way around."  Appeal at 5.  Judge Gorsuch said that, consequently, "[b]efore settling on a guidelines offense level or some other sentencing conclusion, a district court must take account

of the facts -- whether conceded by the defendant, found by a jury, or (perhaps) found by the court." Appeal at 5. Applying Judge Gorsuch's framework to this case, the Court cannot conclude by a preponderance of the evidence for which offenses Judge Sanchez imposed incarceration and for which he suspended Roybal's sentences.

The transcript from the March 27, 2003, sentencing hearing indicates that Judge Sanchez did not specify for which of Roybal's offenses he was imposing sentences of incarceration and for which offenses he was suspending Roybal's sentences he was imposing. Instead, it seems like Judge Sanchez reached a sentence that he thought was fair -- six years imprisonment -- and suspended Roybal's remaining sentences up to that point. Judge Sanchez stated, in pertinent part:

> The Court will sentence Mr. Roybal as follows: So 3 years as to Count 1 of CR-2000-4653; 18 months on CR-2002-0098; 18 months on 2002-03145; 18 months on CR-2002-01074; 9 years on Count 1 of CR-2002-02056. Per agreement, the sentences are to run consecutively for a total period of [1]6 ½ years in the New Mexico Department of Corrections. All but six years will be suspended on condition that Mr. Roybal be on supervised probation for 5 years . . . .

Mar. 27, 2003, Tr. at 7:1-8 (Sanchez, J.). Judge Sanchez' Order from the May 24, 2007, probation revocation is similarly unhelpful. It states:

**<u>TERMS OF SENTENCE</u>**

> IT IS ORDERED that the defendant be sentenced to the custody of the Department of Corrections to be imprisoned for a total of 16 ½ years.
>
> The Defendant was originally sentenced on March 27, 2003 to:
>
> Three years, on a conviction of AGGRAVATED BATTERY, Count 1 of CR 0-04653, a third degree felony offense occurring on or about March 21, 2000; AND
>
> Eighteen months, on a conviction of POSSESSION OF METHAMPHETAMINE, Count 1 of CR-02-00098, a fourth degree felony offense occurring on or about November 16, 2001.

> Eighteen months, on a conviction of POSSESSION OF METHAMPHETAMINE, Count 1 of CR 02-03145, a fourth degree felony offense occurring on or about March 30, 2002; AND
>
> Eighteen months, on a conviction of LARCENY (OVER $250), Count 1 of CR 02-01074, a fourth degree felony offense occurring on or about March 31, 2001; AND
>
> Nine years, on a conviction of ARMED ROBBERY, Count 1 of CR 02-02056, a second degree felony offense occurring on or about June 26, 2002;
>
> With the sentences to be served consecutive to each other for a total term of 16 ½ years.

Order at 1-2.  Immediately following that section, however, Judge Sanchez suspends 2007 days of Roybal's sentence without specifying for which offense he is suspending the sentence:

**<u>CREDIT AND INCARCERATION</u>**

> Defendant is to receive 2190 days confinement credit days pre-sentence confinement credit and credit for 288 days served on probation.
>
> Of the balance of 3544 remaining days:
> 2007 days of defendant's sentence is suspended without condition;
> 1537 days are to be served in actual imprisonment as of May 24, 07.

Order at 2.

Roybal argues that, based on the ambiguity of Judge Sanchez' decision, the Court may presume only that Judge Sanchez sentenced Roybal for the armed robbery offense on March 27, 2003.  <u>See</u> Objections at 8.  Roybal contends that "[t]his is so because the armed robbery was the only offense for which the court statutorily could impose a six year prison term."  Objections at 8.  Consequently, Roybal asserts that his criminal history score for those five offenses should be 3.  <u>See</u> Objections at 8-9.

Roybal's calculation is incorrect for two reasons.  First, he assumes, without any evidence, that Judge Sanchez imposed a full term of incarceration for the armed robbery offense.

- 17 -

Second, by arguing that the court should not impose any points for the other offenses, he does not take into account §§ 4A1.2(a)(3), and (4), which say that the Court should add one point for each prior conviction that was either suspended or never imposed.  See U.S.S.G. § 4A1.2(a)(3), (4).  Under  §§ 4A1.2(a)(3), and (4), even assuming the most beneficial scenario for Roybal -- one in which Judge Sanchez either suspended the sentences for all of his convictions or did not impose incarceration for any of them -- the Court would add 1 point for each of those offenses rather than no points.

In the original PSR, the USPO calculated Roybal's criminal history by assuming that Judge Sanchez imposed incarceration for all five of Roybal's convictions and then suspended a percentage of each one.  See PSR ¶ 34, at 7; id. ¶ 35, at 8; id. ¶¶ 39-43, at 10-12.  In the Revised PSR, the USPO abandons its original approach and calculates Roybal's criminal history score by adding: (i) 3 points for his November 9, 2000, aggravated battery with a deadly weapon crime, see Revised PSR ¶ 34, at 7; (ii) 1 point for his March 31, 2001, crime of larceny over $250, see Revised PSR ¶ 35, at 8; (iii) 1 point for his November 16, 2001, crime of possession of a controlled substance (methamphetamine), see Revised PSR ¶ 39, at 10; (iv) 1 point for his March 20, 2002, crime of possession of a controlled substance (methamphetamine), see Revised PSR ¶ 40, at 11;  and (v) 3 points for his June 5, 2002, armed robbery with a deadly weapon crime, see Revised PSR ¶ 41, at 12.   Aside from saying that these points "were assessed conservatively," however, the USPO does not explain how it reached this result.  Addendum at 1.  When the Court spoke with the USPO on December 12, 2014, the USPO provided different calculations from the Revised PSR that reached the same 9-point total.  In the end, however, each of the USPO's calculations assumed that Judge Sanchez imposed a full sentence of incarceration for at least one of the five offenses.

The problem with the USPO's position is that -- while it is trying to be fair to Roybal -- it assumes what Judge Sanchez may have done.  The USPO's proposed scenarios are logical, but there is little evidence to support them.  There is no indication from either the Mar. 27, 2003, Tr., or the Order that Judge Sanchez imposed a full term of incarceration for any of Roybal's offenses or suspended specific sentences.  Instead, it appears that Judge Sanchez just came up with a number that he believed was fair and suspended the remaining amount of Roybal's sentences.  In the end, the Court cannot say which sentences Judge Sanchez suspended and for which sentences he imposed incarceration by more than fifty percent of the evidence.  All the Court can say by a preponderance of the evidence is that there were five convictions and that Judge Sanchez suspended the sentences for some of those convictions, or some fraction of those sentences, and imposed incarceration for some of those convictions or all of one.  Consequently, the Court must assume that Judge Sanchez either did not impose incarceration for any of Roybal's convictions or suspended all of Roybal's sentences when he sentenced him on March 23, 2007.

Section 4A1.2(a)(3) of the Sentencing Guidelines provides that "[a] conviction for which the imposition or execution of sentence was initially suspended or stayed shall be counted as a prior sentence under § 4A1.1(c)."  U.S.S.G. § 4A1.2(a)(3).  Prior sentences under § 4A1.1(c) each add a point to the criminal history score.  See U.S.S.G. § 4A1.1(c)("Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.").  Moreover, previous convictions for which no sentences were ever imposed also each add a point to the criminal history score.  See U.S.S.G. § 4A1.2(a)(4)("[W]here a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c) . . . .").

Because the Court cannot determine for which offenses Judge Sanchez imposed incarceration and which sentences he suspended, the Court would impose 1 point for each of Roybal's convictions detailed in paragraphs 34, 35, 39, 40, and 41 of the Revised PSR -- giving Roybal a criminal history score of 5 for those convictions.  Section § 4A1.2(e) states, however, that a sentence imposed more than ten years before the offense is not counted as a prior sentence under § 4A1.1(c).  See U.S.S.G. § 4A1.2(e).  The Revised PSR states that the charged offense in this case occurred on March 10, 2014.  Consequently, under § 4A1.2(e), the sentences that Roybal received on March 27, 2003 -- i.e., those detailed in paragraphs 34, 35, 39, 40, and 41 -- do not count towards Roybal's criminal history score, leaving him with a criminal history score of 0 for those offenses.

## II.   THE COURT WILL ASSESS 6 CRIMINAL HISTORY POINTS FOR THE TWO OFFENSES FOR WHICH ROYBAL WAS SENTENCED ON MAY 24, 2007.

Roybal contends that the Court should consider the sentences he received on March 24, 2007, as one sentence, because there was no intervening arrest between the two offenses for which he was sentenced on that day.  Roybal argues that he was already in prison when he committed the second offense, so he was merely charged with that crime, not formally arrested.  Roybal contends that, because there was no formal arrest between the two offenses for which he was sentenced on May 24, 2007, the Court should consider the sentences he received that day as one sentence.   The Court disagrees.

The Sentencing Guidelines do not define the term "arrest" in the context of § 4A1.2(a)(2).  Contrary to Roybal's contentions, however, an "intervening arrest" does not require a formal arrest -- i.e., handcuffing the individual and taking him or her into custody.  Instead, whether an intervening arrest separated the offenses turns on whether the offenses are

factually related.   See United States v. Mohammed, 150 F. App'x 887 (10th Cir. 2005)(unpublished).[3]

The Court and the Tenth Circuit addressed this issue in a case with strikingly similar facts to this one.  In United States v. Mohammed, the defendant -- Omar Mohammed -- was charged with robbing another inmate while he was awaiting sentencing on a battery conviction.  See 150 F. App'x at 889-90.  The state court judge sentenced Mohammed for both crimes in the same hearing.  See 150 F. App'x at 889-90.  When the Court later sentenced him in federal court, Mohammed argued that, because he was already in custody when he committed the robbery, there was no intervening arrest, and the sentences should not be considered separately under § 4A1.2.  See 150 F. App'x at 889.  The Court disagreed and considered the sentences separately in calculating Mohammed's criminal history score.  See 150 F. App'x at 889.

On appeal, in an opinion that the Honorable Wade Broby, United States Circuit Judge from the Tenth Circuit authored, and Judges Tacha and Porfilio joined, the Tenth Circuit upheld the Court's decision.  See 150 F. App'x at 891-92.  Rather than focusing on whether Mohammed was formally arrested between the two offenses, Judge Broby found there was no intervening

_____

[3]United States v. Mohammed is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266 (10th Cir. 2005).  The Court finds that United States v. Mohammed has persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

arrest between the two offenses because Mohammed had not shown any "factual nexus" between

those offenses.  150 F. App'x at 891-92.  Judge Broby stated that Mohammed also had not

> shown the district court's decision to handle the two offenses on the same day
> involved anything more than issues of judicial economy and convenience.
> Rather, the judgment and amended judgment plainly show two separate, unrelated
> offenses (aggravated battery and robbery), charged in separate indictments, under
> different docket numbers, for different crimes which occurred almost four months
> apart, to which he pled guilty.  The only factor largely weighing in Mr.
> Mohammed's favor is that neither the judgment nor amended judgment
> specifically refer to more than one sentence or "concurrent" sentences, even
> though the parties explicitly agreed the sentences for the two offenses should run
> concurrently.  Instead, the judgment and amended judgment appear to enter a
> singular sentence of three years.  It is unclear from the record on appeal whether
> the state district court inadvertently omitted discussion of separate sentences,
> concurrent or otherwise. . . .  In this case, it is clear Mr. Mohammed received two
> separate, prior convictions for aggravated battery and robbery under separate
> docket numbers, regardless of how his sentencing was imposed on the same day.
> Considering the issue de novo, in view of the applicable law and particular
> circumstances involved in this case, we conclude the district court did not err in
> applying both prior convictions . . . .

United States v. Mohammed, 150 F. App'x at 892.

       As in United States v. Mohammed, Roybal has not demonstrated a factual nexus between

the charges detailed in paragraphs 42 and 43 of the PSR.  He also has not shown the state district

court's decision to handle the two offenses in the same hearing involved anything more than

issues of judicial economy and convenience.  Similar to Mohammed's two charges -- which were

charged in separate indictments under different docket numbers -- Roybal's offenses appear to be

charged in separate documents under two different docket numbers, compare Revised PSR ¶ 42,

at 13 ("Count 2 Contributing to the Delinquency of a Minor . . . Docket No.: D-202-CR-2007-

01118"), with Revised PSR ¶ 43, at 14 ("Possession of a Controlled Substance (Cocaine) . . .

Docket No.: D-202-CR-2007-02970").   Although there was significantly less time between

Roybal's arrests than Mohammed's -- four days rather than four months -- Roybal's charges

were for two distinct and unrelated incidents.  Roybal's December 22, 2006, offense for

contributing to the delinquency of a minor involved Roybal smoking marijuana with a number of individuals in a hotel room.  See Revised PSR ¶ 42, at 13-14.  By contrast, his December 26, 2006, offense for possession of a controlled substance (cocaine) involved him hiding cocaine in his anal cavity while in custody at the Metropolitan Detention Center.  See Revised PSR ¶ 43, at 14.  Accordingly, Tenth Circuit precedent indicates that there was an intervening arrest under § 4A1.2(a)(2) between the charges detailed in paragraphs 42 and 43 of the PSR, and the Court will consider those sentences separately.  The Court will, thus, adopt the PSR's assessment of 3 criminal history points for each of those sentences for a total of 6, which places him in criminal history category III and a Guidelines range of 70-87 months imprisonment,

IT IS ORDERED that the Defendant's Objections to the Presentence Report and Sentencing Memorandum, filed November 18, 2014 (Doc. 26), are sustained in part and overruled in part.  The Court sustains the objection to the PSR's assessment of 9 criminal history points for the five offenses for which Defendant Orlando Roybal was sentenced on March 27, 2003; and overrules Roybal's objection to the PSR's assessment of 6 criminal history points for the two offenses for which Roybal was sentenced on May 24, 2007.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Rumaldo R. Armijo
Linda Mott
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

- 23 -

Stephen P. McCue
  Federal Public Defender
John F. Robbenhaar
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

  *Attorneys for the Defendant*